JULIAN BILEWICZ, complainant,

*v.*

JOZEF KALINOWSKI et al., defendants.

———

JOZEFA KALINOWSKI, complainant,

*v.*

HENRY SCHULTZ and STELLA SCHULTZ, his wife, defendants.

[Heard and determined September 25th, 1924. Filed October 2d, 1924.]

**Conveyances—Complicated Conditions Affecting Title—Sale to Complainant Fraud Under Circumstances—Title Restored to Original Parties and Return of Payments Decreed.**

On bills, &c.

*Mr. Frank F. Neutz,* representing Jozefa Kalinowski.

*Mr. Walter S. Keown* and *Mr. George Rothemal,* representing Henry Schultz and Stella Schultz, his wife.

*Mr. Albert S. Woodruff* and *Mr. Rocco Palese,* representing Julian Bilewicz.

LEAMING, V. C.

I can't believe there is any substantial advantage to be gained in taking this case under advisement. The facts of the case I can deal with as accurately now as at any time, and there are no questions of law involved that I have not given very mature consideration in other cases, and I think I will undertake to dispose of it now, and that very briefly.

There are undoubtedly some circumstances surrounding this conveyance by the Kalinowskis to the Schultzes that are suspicious, to say the least. Stefanski, the assistant of Lupton, the real estate agent, who put the transaction through, I am convinced knew perfectly well all of the facts and circumstances that existed. In finding that the agreement between Bilewicz and Kalinowski had not been recorded, and believing that a sale could be made that would give a perfect title to a purchaser who bought in reliance upon the record, he thought that that would settle all the trouble about the title to the city property, because the purchaser could at once oust the occupant, having, as he would have, a perfect legal title. That was his scheme, those were his thoughts, and that was his aim, in my judgment. The only shadow of doubt that I have touching the facts is as to how far Mr. and Mrs. Kalinowski were in on that plan; how far they were really participating in what they understood to be a well-devised scheme to sell this property to Schultz so that he would attain the status of an innocent purchaser; and there may be a shadow of doubt—as I stated a moment ago there are many suspicious circumstances that suggest that doubt—as to whether or not Schultz also, instead of being in fact an innocent purchaser, was really a participant in the general scheme; but I am convinced that the testimony will not justify that last conclusion.

Under the testimony before this court and the evidence of the case as it stands, I am convinced that Schultz must be—rather the Schultzes, the deed is to the two of them—must be regarded as having purchased this property without knowledge of any clouds on the title and in the belief that they were getting perfect title to it, and the reason that they believed that they were getting title to it was because Stefanski and the Kalinowskis deceived and defrauded them; not only failed in the duty which they clearly owed to the Schultzes to tell them the truth and apprise them of the real situation, but also misrepresented the nature of Bilewicz's possession. We have here before us a written document signed by both the Kalinowskis in which they certify over

their signatures that Bilewicz is a tenant of theirs and occupies that property as a tenant, and by that writing they direct him to pay all future rent to Schultz as the purchaser and new owner of the property. Mrs. Kalinowski does say she thinks the paper which she signed was a smaller paper than that, but I have no doubt but that she signed that paper with her husband and knew perfectly well its contents. I don't believe that Mr. Lupton, the real estate agent, or even the smooth. Stenfanski, pulled that paper over on the Kalinowskis. How could they? How could a woman as shrewd as Mrs. Kalinowski obviously was upon the witness-stand—I regarded her as a wonderfully intelligent woman, although she can't speak the English language, a wonderfully, clear-minded, intelligent, bright woman—help but know that she was putting the Schultzes in a hole in selling this property to them, since she was having difficulties, by reason of this tangle, in getting Bilewicz out of the property. How could she anticipate that a purchaser would get them out any easier than she by merely selling her rights or transferring them to a purchaser? So, unless it be true—of which fact there is only a vague suspicion, and the testimony certainly negatives the suspicion—that the Schultzes were in on this deal and actually knew all the circumstances and were standing in with the Kalinowskis in order to make a short road and an easy method of getting them out of the tangle they had gotten in and to get possession of the city property for them, unless that is true, it is impossible to believe that both of the Kalinowskis were not participating in a scheme of fraud, a scheme of fraudulent conduct, and that they were conveying to the Schultzes a title that they knew they could not rightfully convey, because their agreement with the Schultzes was an agreement for the conveyance of a property free and clear of all encumbrances, and they, better than anyone else, knew the property was frightfully encumbered from circumstances arising from their own conduct. My judgment is that they were handing this property over to the Schultzes with a view of getting the $2,300 cash into their hands and getting a purchase-money mortgage for

the balance, and then stepping out from under, letting the Schultzes get along the best that they could. This they accomplished by false representations. That is fraudulent conduct against which a court of equity is especially charged to afford a remedy. A sale founded in fraud, as in my judgment that sale was, cannot stand, and will not stand, and, of course, with the sale set aside, the purchase-money mortgage necessarily fails, and the return of the $2,300, which was paid, is imperatively called for.

In their scheme they were very foolish, because they did not even clothe Schultz with the status of an innocent purchaser for value, since the law cast upon him the burden of ascertaining under what right and under what claim the actual occupant of the property was in possession. The mere fact that the vendor characterized him as a tenant, or stated that he was a tenant, would not remove from the purchaser the duty to inquire and ascertain from the best source of information available, which would be the occupant of the property, under what claim of right he occupied that property. The truth clearly is that the impelling motive upon the part of the Kalinowskis was to get rid of their property and get out of all their trouble, by getting the cash into their pockets and getting a purchase-money mortgage, and thus be in a position where they could say to everybody else, "We are out of it, you can whistle, carry the load and get along the best you can." They had already looted the farm; they had the benefit of the crops which they sold and the farm stock which they had disposed of, and had left the farm vacant and idle, and now they were getting a fair price for their property, and all in all they stood to be pretty substantial winners, and the temptation was too much for them, in my judgment.

I am convinced that the only decree that can be made in this case, so far as the Schultzes are concerned, is a decree setting aside the conveyance upon the ground of fraud perpetrated upon them by their vendors, and a cancellation of the mortgage, which decree, of course, includes in the foreclosure suit a denial of the decree of foreclosure, and a direc-

tion requiring the Kalinowskis to surrender and return to the Schultzes the $2,300 cash which has been paid to them. Now, it might happen that the Kalinowskis are not able to raise this $2,300. I think they are, but supposing they can't raise it? If the title to this property is to be restored to the Kalinowskis, as it must be if the specific performance suit fails—and in any event a deed will be made from the Schultzes to the Kalinowskis to restore the title as it was—isn't it clear that an equitable lien upon the property will enure to the Schultzes for the $2,300, so that they will be sure to get their money back, unless there are some other circumstances that will render the equitable lien impossible, or will render other charges superior to that equitable lien.

This brings us to the specific performance suit. In a case, the title of which I cannot recall, I suggested a matter touching estates by the entirety that was entirely *obiter* and unnecessary to its decision. I suggested that it was my view that where tenants by the entirety had not both signed the agreement of sale, and the husband alone had signed, that specific performance could be had against the husband with an abatement for the value of the wife's interest, and that the value of the wife's interest could be determined by ascertaining the expectancy of the life of the wife and the expectancy of the life of the husband, and treating their interests as proportionate. For instance, if the wife's expectancy was ten years and that of the husband was eight years, the interest of the husband's would be worth eight-eighteenths of the total vaue of the property, and the interest of the wife's would be worth ten-eighteenths of the whole value of the property, and there could be an apportionment or an abatement of the purchase price, so that the husband would have to convey his interest and accept for it eight-eighteenths —in the illustration which is made—of the purchase price.

I don't know whether in the bill for specific performance any claim is made for an abatement or not. It is not a very satisfactory result in any case, even where there is not a tenancy by the entirety and the abatement is simply the value of a wife's dower interest, but since the time when the view

above stated was suggested by me, I have given a great amount of consideration and a considerable amount of research in reviewing that question, and in that I had the benefit of the co-operation of Vice-Chancellor Fielder, who had the same question before him. We together considered it very fully and both agreed that I was probably in error in what I have referred to as my *obiter,* to the effect that specific performance could be decreed with an abatement in the case of a tenancy by the entirety where a wife had not signed. The court of errors and appeals has rendered some decisions that would seem to very measurably support the views which I first expressed, but I am satisfied that on a full and direct examination of the entire subject by that able and careful body they will conclude, as I have since concluded and as Vice-Chancellor Fielder has concluded, that the inherent quality of an estate by the entirety as it was defined by the English law, and the reasons for its existence, and the reason for its protection, are such that it would be contrary to sound principle to sever that estate by a decree of that nature, even though the effect of the decree was limited to what might be called the husband's reversion after the wife's death.

It is true that the court of errors and appeals has held that a judgment against the husband is a lien on his interest in an estate by the entirety. That I take it is the law of this state, although it does seem a little inconsistent with what I have just said touching a specific performance case; but that is, as I understand it, the recognized law of this state, a judgment may be a lien on the husband's so-called reversion. It sems to follow that where a husband has been successful in resisting a suit for specific performance because his wife who holds with him refuses to sign the deed, the complainant is not wholly without remedy, because he can procure a judgment for damages, if he can establish any, and that judgment will become a lien on the husband's share, and, eventually, ripen into value, although the judgment creditor stands a chance to lose the lien by reason of the husband's death before that of the wife, if that is all the property the husband had.

My conclusion, therefore, is that specific performance cannot be decreed because of the tenancy by the entirety, the wife not having signed the agreement, even thought it were ascertained at this time by proofs, which it has not been what the reasonable expectancy of the lives of the husband and wife, respectively, may be. That will necessitate leaving the parties in the situation which they have created, with the legal title to the city property in the Kalinowskis. They will be endowed with the legal title both by the original record title and by the reconveyance from the Schultzes, and as tenants by the entirety.

It may be suggested that it would be in the power of this court to ascertain by reference to a master what damages the Bilewiczes have sustained and decree a lien for that. I don't think so; I think that is purely a legal function which must be performed by a jury, and that relief of that nature cannot be awarded here.

So, the result of all this troublesome litigation will be to restore the titles to the original parties, a settlement by the Kalinowskis with the Schultzes, based on rescission, and the Kalinowskis will have to pay for whatever produce they have taken off of the farm and appropriated to their own use.

I will advise a decree along those lines.